BROOM, Justice.
The Board of Savings & Loan Associations, a state administrative tribunal, ordered that North Mississippi (an existing association) be authorized to establish and operate a savings and loan branch office in Grenada, Mississippi. North Mississippi’s petition to be so authorized was protested by several objectors, the appellees herein. Simultaneously, certain appellees petitioned for a charter to incorporate and operate an association in Grenada to be known as Heritage Savings & Loan. North Mississippi appeals from a Grenada County chancery court decree reversing the Board’s order which authorized North Mississippi’s branch office. We affirm.
The controlling issues are: Does the Savings & Loan Act of 1962 [Miss.Code Ann. 81-11-1 (1972) et seq.] in situations where two petitioners have applied for authority to locate or establish a savings and loan business in a particular area, permit the Board to simultaneously consider such applications filed at different times? May the Board hear comparative evidence as to which petitioner could render a more substantial benefit to the area to be served ?
FACTS
On August 4, 1972, the appellant, North Mississippi, whose home office was in Clarksdale, petitioned the Board for authority to establish and operate a branch office at Grenada. On October 23, 1972, certain objectors (appellees) filed objections and protests to North Mississippi’s petition. In their pleadings certain of the objectors admitted the need for an additional savings and loan facility in the .area, but denied that North Mississippi would either benefit or be a significant asset to the area. In addition to objecting to North Mississippi’s petition, certain of the objectors affirmatively pleaded that they had filed simultaneously with their objections and protests an application to incorporate and operate an association to be known as Heritage Savings & Loan. They alleged that a need existed for a savings and loan association in the area but that the need was for a locally owned and operated association rather than “a multi-branch conglomerate.” The objectors raised the issue of whether or not a locally owned and operated association could better fulfill the needs of the area and render a greater benefit to it than could a branch of North Mississippi.
During presentation of its case to the attorney-referee, North Mississippi put on certain proof and then called as adverse witnesses the objectors (appellees) to its application. Later when the appellees were presenting their case, the attorney-referee sustained the objection of North Mississippi to any comparative testimony to the effect that Heritage could benefit the area more than North Mississippi. In making his ruling the attorney-referee stated that “we know that this (North Missis *915 sippi’s petition) is not going to be decided until the second one (Heritage’s petition) is heard anyway. That is where your comparison will come in so I am disallowing the question.” At that time the appellees made profert of testimony that Heritage could serve the area to a greater degree than could North Mississippi by operating a branch.
On April 4, 1973, the attorney-referee submitted his findings to the board. He found that the petitioner had made out a prima facie case “there being no rebuttal as to any of the three requisites prescribed by section 5288-06 [now Mississippi Code Annotated section 81-11-11 (1972)].” Included in his findings was a recommendation to the Board that the petition of North Mississippi to operate the branch office at Grenada be approved. At the same time, he also recommended that the Board’s decision on the North Mississippi petition be delayed or withheld until after a hearing on Heritage’s application.
On April 5, 1973, the Board met and accepted the fact findings and recommendations of the attorney-referee except the recommendation that it delay and withhold its decision. The Board then found that North Mississippi had met the three statutory requirements and authorized North Mississippi to establish and operate its branch at Grenada. On appeal the chancery court reversed the Board. The chancellor found that the Board’s action in granting North Mississippi’s petition without a hearing on Heritage’s application was erroneous, and that it operated to deny Heritage an opportunity to be heard on its petition before the granting of North Mississippi’s application.
Mississippi Code Annotated section 81-11-11 (1972) requires that, before the Board shall approve a charter, there must be shown:
(1) A need for the association in the area . . . , (2) that the presence of the proposed association will not jeopardize the financial stability of any existing association . . . , (3) that the organization of the association will benefit the area .
Although there was substantial evidence presented by North Mississippi to establish the requirements of section 81-11-11, supra, the chancellor correctly ruled that comparative evidence should be heard tending to show which of the two associations could most beneficially serve the area. We reject the argument of North Mississippi that the referee and the Board were statutorily enjoined to consider only its evidence that tended to establish the statutory requirements of section 81-11-11, supra.
North Mississippi further argues that the Act, supra, does not permit simultaneous consideration of applications filed at different times for operation of a savings and loan facility in the same area. Cited by North Mississippi is Mississippi Code Annotated section 81-11-13 (1972), which states in part:
During the time the cause [an application that is being considered by the board] is pending before the board or the court, the board shall not issue a certificate to a subsequent applicant to incorporate and organize a new association or authorize any association then existing to establish a branch or association or branch office within the area wherein the proposed new association is to be domiciled, and neither shall the board consent to the removal of the domicile of an existing association from another place into the area where the proposed new association will be domiciled.
Clearly, the statute, during pendency of North Mississippi’s application, only prohibits the Board from: (1) issuing a certificate of incorporation to a new association or (2) authorizing an existing association to establish a branch association or branch office, and (3) consenting to the removal of the domicile of an existing as *916 sociation. Thus, it is clear that North Mississippi’s contention in this regard is untenable. Our interpretation of the Act is that two applications may be simultaneously considered, but the first application filed must be either granted or dismissed before a subsequent application can be finally adjudicated or acted upon.
The question is squarely presented: If the Act does not prohibit the simultaneous consideration of two applications, did the chancellor err in ordering the Board to hear both applications before making a decision? We think he did not. Justification for this conclusion may be noted in the title to the Savings and Loan Act, which reads in part: “An Act to protect the saving public . . . .” Ch. 228, § 1 [1962] Miss.General Laws 307.
Further justification for this conclusion may be pointed out by the following hypothetical • illustration: A and B both filed applications with the Board at precisely 8:00 a. m., for permission to operate a savings and loan facility in the same area. A’s application is docketed first. Is B to be deprived of an opportunity to show that it is entitled to serve the area simply because the Board arbitrarily docketed A’s case first? The answer has to be in the negative if the Act is to be construed so as “to protect the savings public” as stated in the title to the Act. Therefore, we rule that when two applications have been filed for authority to locate or establish a savings and loan business in a given area, consideration should be given by the Board to the merits of each application so as to insure that the savings public will be protected.
The chancellor rendered a most excellent and enlightened opinion in this cause. His opinion states:
Agreeing with Appellee that the Court takes judicial notice of the Board’s Rules and Regulations, and being of the view that it' could ascertain, for itself, what these Rules are, the Court at this point requested of Appellant, and has received directly from the Board’s office, a set thereof. These Rules and Regulations have been examined and the Court has found nothing therein providing against consolidation of hearings such as this or the withholding of decision on one application until another has been heard.
Affirmed.
RODGERS, P. J., and PATTERSON, INZER, SUGG and WALKER, JJ., concur.
GILLESPIE, C. L, took no part.